IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANGELA MIXON, o/b/o T.A.R. )<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>)<br>    **Defendant.** )<br>) | CIVIL ACTION NO.<br>2:10-CV-98-TFM |

## MEMORANDUM OPINION AND ORDER

Angela Mixon ("Mixon") applied for supplemental security income under Title XVI, 42 U.S.C. §§ 1381 *et seq*., on behalf of her minor daughter, T.A.R. ("TR"), who is now 10 years old. After the administrative denial of her application, Mixon received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review the decision became the final decision of the Commissioner of Social Security ("Commissioner").[1] Judicial review proceeds pursuant to 42 U.S.C. § 1383(c)(3) and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

### STANDARD OF REVIEW

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 includes the standard to define child disability under the Social Security Act. *See* PUB. L.

---

[1] R. at 1.

NO. 104-193, 110 Stat. 2105, 2188 (1996). The statute provides that an individual under 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999). The sequential analysis for determining whether a child claimant is disabled is as follows:

> 1. If the claimant is engaged in substantial gainful activity, he is not disabled.
> 2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.
> 3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d).

If an ALJ finds a child's severe impairments do not meet or medically equal regulatory Listings, he must determine whether the impairments are "functionally equivalent" to the Listings. This task requires an ALJ to assess the degree to which a child's limitations interfere with normal life activities. Regulations specify six major domains of life for evaluation:

(i)  acquiring and using information;
(ii) attending and completing tasks;
(iii) interacting and relating with others;
(iv) moving about and manipulating objects;
(v) caring for oneself; and
(vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). If a child has "marked" limitations in two of these domains, or an "extreme" limitation in one, the child is considered to have "functionally equaled" the Listing. *Shinn v. Commissioner of Social Security*, 391 F. 3d 1276, 1279 (11th Cir. 2004). The Commissioner's regulations provide that if a child's impairment or impairments do not meet, medically equal, or functionally equal a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2). In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *Shinn*, *id*. at 1282.

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If

the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

TR was a nine year old, fourth grade student during the administrative hearing on April 16, 2009. Her mother, Mixon, testified TR attends special education classes for math, spelling, and reading. Mixon described TR's multiplication, reading, and comprehension skills as below grade level. Mixon said that TR gets angry and cries when she has difficulty with a task. TR has received speech therapy in the past and has trouble pronouncing easy words. Mixon said TR was diagnosed with attention deficit hyperactivity disorder (ADHD) and is easily distracted. TR loves to wash dishes and make her bed. Mixon said TR reported seeing people that others could not see on multiple occasions.

TR gets along well with other children and has normal arguments with her two siblings. She has occasional, but not ongoing behavior problems at school. TR was suspended once for taking another child's property when she was in the third grade. She is a C/D student who has been unable to pass the Conecuh County math exam. TR takes Adderall for her ADHD, which Mixon says calms TR but makes it hard for her to focus. TR takes Albuterol for asthma flare-ups, and occasionally uses nasal strips when sleeping. She experiences no side effects from her medications. TR has no problem with physical exertion and plays normally with other children. TR does not sit still when watching television but is good at playing Xbox video games, and displays an ability to concentrate when playing those games. TR can tell time on a digital clock and needs help making change and counting money.

The ALJ's review of teacher reports noted TR receives special education in reading and math, even though her teacher reported TR's reading is on par with that of other students.[2] Math is her only significant area of weakness, and despite the accommodations provided, TR is not able to reach the 80% score required to pass math and reading in Conecuh County. TR does not have absenteeism problems and her behavior is generally good. She is able to understand and follow directions, work independently and complete tasks when the work suits her ability level highest, and gets along with others fairly well. Her self-help skills are age-appropriate. TR was administered the Universal Nonverbal Intelligence Test (UNIT) on February 28, 2007. Her full-scale IQ score of 82 placed her overall intelligence in the Low Average range

---

[2] Mixon erroneously stated that TR receives special instruction in spelling, reading, and math. R. at 11, 22.

and is ranked at the 12th percentile. TR's short-term memory skills are classified as Low Average and ranked at the 21st percentile. Her reasoning abilities are classified as Delayed and are ranked at the 8th percentile. TR's symbolic (verbal) skills are classified as Average and are ranked at the 32nd percentile. An Individualized Education Program (IEP) for TR's third grade year shows she read at the first grade level, with math skills at kindergarten level. TR's reading problems negatively affected her progress in other curriculum areas.

TR's medical records from the Barnes Family Medical Association cover treatment from infancy to the application period. Dr. Stephen West first prescribed Strattera for treatment of ADHD in February, 2006. In August, 2007, Mixon inquired whether TR was eligible for disability, and Dr. Stanley Barnes noted that was not his determination to make.[3] but the prescription wasn't filled. In treatment notes from November, 2007, Dr. Barnes recorded Mixon's complaints about TR's ADHD, her failure to obtain Strattera as prescribed, and her belief that TR should receive disability. Dr. Barnes saw "no evidence of any problem that might necessitate [TR] being on disability."[4] Dr. Barnes dismissed Mixon's complaint that TR is underweight and in need of vitamins. He prescribed Medidate CD for ADHD, but wrote "[h]onestly, I think I'm probably treating mom more than I'm treating the child at this time."[5] Dr. Barnes also noted that reports of hyperactivity were not from TR's school, but were seemingly driven by Mixon's efforts to secure disability payments for TR. Notes from a January,

---

[3] R. at 165.
[4] R. at 240.
[5] R. at 240.

2009 visit to a nurse practitioner in Dr. Barnes' office show TR's ADHD medication was changed to Adderall because Mixon reported the Metadate made TR like a "zombie."[6] Mixon expressed concern during a March, 2009 visit about TR's fear of going to bed after watching horror movies. Dr. Barnes recommended that TR not be allowed to watch horror movies.[7]

Dr. Barnes referred TR to Southwest Alabama Mental Health where she was seen from December, 2007 through February, 2008. Mixon reported TR talks to people who are not there, but the assessment of TR did not support the claims.[8] TR was diagnosed with ADHD, combined; a learning disorder, not otherwise specified; problems with academic and behavioral performance; primary support; psychosocial issues; and a global assessment of functioning (GAF) score of 55. The ALJ noted this score places TR in the range of persons with "**[m]oderate symptoms** (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (*e.g.*, few friends, conflicts with peers or co-workers).[9]

The ALJ found TR has severe impairments due to a learning disability and ADHD, and the non-severe impairment of asthma.[10] He found TR does not have an impairment or combination of impairments that either (1) meet or medically equal, or (2) functionally equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix I.[11] The ALJ found TR's medically determinable impairments could reasonably be expected

---

[6] R. at 243.
[7] R. at 244.
[8] R. at 255.
[9] R. at 47, n.1.
[10] R. at 44.
[11] R. at 47.

to produce the alleged symptoms, but the "statements concerning the intensity, persistence and limiting effects of [TR's] symptoms are not credible to the extent they are inconsistent with finding that [TR] does not have an impairment or combination of impairments that functionally equals the listings **for the reasons explained below**."[12] The ALJ cited reasons from the administrative record, including statements from Mixon that TR's ADHD is relieved by Adderall, her asthma is controlled by Albuterol, and she can interact with other children without problems. The ALJ also cited teacher's reports that TR struggles academically but is on par with other students in reading, that her behavior is generally good in the regular classroom, that she gets along with others fairly well, and has age-appropriate self-help skills. The ALJ noted TR's GAF score of 55 denotes moderate symptoms and does not impose significant restrictions on TR's ability to function.

Dr. Robert Estock completed a Childhood Disability Evaluation Form for the State Agency on October 2, 2007.[13] Dr. Estock found TR has a severe impairment or combination of impairments, but does not meet, medically equal, or functionally equal the Commissioner's listings. The records in TR's file led Dr. Estock to conclude she has less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others. Dr. Estock cited reports from TR's special education teacher that she has obvious problems in academics, especially math; obvious problems in carrying out multi-step instructions, completing homework, working without distracting self and others, and working at reasonable pace and finishing

---

[12] R. at 49 (emphasis added).
[13] R. at 233-36.

8

on time; and slight problems interacting with others.[14] The evaluation found no limitations in moving about and manipulating objects, caring for herself, and health and physical well-being.

The ALJ applied the record evidence to the six domains of function to determine whether TR functionally equals the listings. The ALJ found TR is without limitation in moving about and manipulating objects, caring for herself, and health and physical well-being. Assessed limitations in the first three domains of function are as follows:.

(1) Acquiring and Using Information

The ALJ found TR's learning disability causes marked limitations in this domain, based on her significant weakness in math, and need for intervention with math and reading.

(2) Attending and Completing Tasks

The ALJ considered conflicting evidence as to the impact of TR's ADHD on this domain. Mixon said TR is hyperactive and unable to stay seated, whereas the special education teacher wrote TR understands instructions, follows directions and works independently to complete tasks at her ability level. The ALJ concluded TR has less than marked limitation in this domain.

(3) Interacting and Relating with Others

The ALJ found TR's record of generally getting along with others fairly well despite normal bickering, and single suspension from school placed her in the range of children with less than marked limitation in this domain.

---

[14] R. at 119-20; 235.

Thus, the ALJ found TR does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning. Thus, she does not functionally equal the listings. Having found that TR neither meets, medically equals, nor functionally equals the listings, the ALJ found TR is not disabled under the Act.[15]

### III.  ISSUES

Mixon raises three issues for judicial review:

1. Whether the ALJ committed legal error at step three of the evaluation process.

2. Whether the ALJ's functionality findings lack the support of substantial evidence.

3. Whether the ALJ's credibility finding complies with Eleventh Circuit precedent.

### IV.  DISCUSSION

**1. The ALJ did not commit legal error in the evaluation process.**

Mixon argues the ALJ committed reversible legal error at step three of the evaluation process in two different respects. Her first argument is that the ALJ should have sought a medical opinion or testimony from a medical expert when considering whether TR's combination of impairments meets or medically equals the Commissioner's listed impairments. Mixon contends the ALJ's failure to obtain and incorporate a medical opinion constitutes reversible error. Her second argument challenges the

---

[15] R. at 31. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

sufficiency of the ALJ's discussion of his functionality findings. The Commissioner responds the ALJ correctly evaluated TR's combination of impairments.

Mixon argues the ALJ was required to obtain an opinion about whether TR's combination of impairments meets or medically equals a listing under guidelines in the Hearings, Appeals Litigation Law Manual (HALLEX) § 1-2-5-34, and Social Security Ruling (SSR) 96-6p. The administrative record included an opinion from Dr. Robert Estock of the State Agency. Dr. Estock concluded TR does not meet, medically equal, or functionally equal the Commissioner's criteria for disability. The Commissioner explains that SSR 96-6p only requires an updated medical opinion when additional medical evidence is received that may alter the state agency medical consultant's finding that a claimant's impairments do not equal the listings.[16] Here, the record did not contain "additional medical evidence" that would prompt the ALJ to seek an alternative opinion regarding TR's placement within the listings. The Commissioner also notes that this Court has previously found that HALLEX does not carry the force of law and does not provide an independent basis for relief against the Commissioner. *See Childs v. Astrue,* 2009 WL 902614, *6 (M.D. Ala. 2009).

Mixon's second argument for legal error at step three faults the ALJ's discussion of whether TR "meets" or "medically equals" a disability listing. Citing *Ellington v. Astrue,* 2008 WL 1805435, (M.D. Ala. 2008), Mixon asserts the ALJ did not make "any reference to any particular Listing" and failed "to give any explanation for this finding." *Ellington*, 2008 WL 1805435 at *8. *Ellington* held the ALJ should have presented a

---

[16] Def. Br. at 6.

11

three-tiered approach wherein the three means of satisfying disability criteria - meets, medically equals, or functionally equals - are distinct inquiries. *Id.* The Court has reviewed *Ellington*, and finds it distinguishable from TR's case. In *Ellington*, a very troubled and violent child presented symptoms applicable to multiple listings, including ADHD (112.11), psychotic disorder (112.03), and personality disorder (112.08). The ALJ's failure to specify in discussion which listing(s) did not apply, and why, prevented the Court from determining whether the adverse findings were supported by substantial evidence. The Court went on to cite reports of constant violence displayed by the child, and reversed the ALJ's finding that there was "no limitation in interacting and relating with others." *Ellington, id*. at *8-9.

Here, there is no suggestion that TR should be evaluated under any other listing but the one for ADHD (112.11). Though the ALJ did not specifically reference this listing, there is no confusion from the face of the record that her impairment is due to ADHD, and alternative listings are not at issue. The ADHD listing requires a showing of (1) marked inattention; (2) marked impulsiveness; **and** (3) marked hyperactivity, coupled with **at least two marked impairments** in age-appropriate functions of cognitive/communication, social functioning, personal functioning, or concentration, persistence, and pace. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.11. After summarizing the evidence, the ALJ found TR does not meet or medically equal a listed impairment. This finding is supported by the opinion from Dr. Estock, whose medical review concluded TR does not meet, medically equal, or functionally equal a listing.

The Commissioner further supports the ALJ's finding by highlighting Mixon's failure to submit evidence that TR met or equaled the listing for ADHD. The five-step sequential analysis set forth in regulations requires that a claimant prove that he is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (the claimant has the burden of proving disability and producing evidence in support). The medical opinion from Dr. Estock supported the ALJ's conclusion that TR does not meet or equal the disability listing for ADHD, and there was no legal requirement that, under the circumstances, he seek another medical opinion.

Accordingly, the Court finds no error as to this issue.

**2. The ALJ did not err in evaluating TR's ability to attend and complete tasks.**

Mixon's second issue claims reversible error in the ALJ's functionality findings. She argues the finding that TR has less than marked limitation in the domain of attending and completing tasks is incorrect, and the analysis is inadequate. The Commissioner responds the ALJ's finding is consistent with the record evidence and the ALJ did not err on this issue.

Mixon argues the ALJ conducted an inadequate analysis of TR's functionality and cites reports – dated September, 2007 - from her special education teacher of "obvious daily problems" in carrying out multi-step instructions, completing homework, working without distracting self and others, and working at reasonable pace and finishing on time. Additional classroom observations of TR's speaking out and being loud are noted as

daily problems the ALJ did not address in his functionality evaluation. Mixon urges reversal based on these reports and her own testimony of TR's behavior, as she contends it is evidence to support a finding that TR has a marked limitation in attending and completing tasks.

The teacher reports from 2007 were considered in Dr. Estock's evaluation finding TR does not meet any criteria for disability. Further, though the ALJ did not specifically reference the reports, his statement that his findings were made after consideration of the entire record are sufficient to support this Court's finding that he did, in fact, consider the information. "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Finally, the ALJ decision indicated Mixon's testimony was not fully credited regarding the extent of TR's hyperactivity and attendant symptoms.[17]

In addition to evidence from Mixon and the reports of obvious problems with TR's classroom behavior in 2007 were positive comments from TR's special education teacher.[18] This review – dated April, 2009 - almost two years after the previous report - notes TR "probably reads almost as well as some of the other students" in the general education classroom, has generally good behavior, and enjoys being successful. The comments continue to note TR's good receptive/expressive language skills, her ability to understand/follow directions, work independently, and complete tasks at her ability level.

---

[17] R. at 49. The ALJ's credibility findings are challenged by Mixon and discussed in Part IV, 3 *infra*.
[18] R. at 135-38.

The 2009 report notes TR's "only significant area of weakness is in mathematics."[19] The report plainly states that TR can complete tasks through independent work.

The later report from TR's teacher, and the record as a whole, supports the ALJ's finding that TR has less than marked limitation in the domain of attending and completing tasks. The special education teacher described a child who is progressing with the help of the special education accommodation. The ALJ supported his conclusion by citing the 2009 report, which plainly contradicted Mixon's testimony of TR's ADHD symptoms. The Court finds no error in the ALJ's finding that TR has less than marked limitation in this domain.

### 3. The ALJ Articulated Adequate Reasons for His Credibility Determination.

Mixon argues the ALJ's credibility finding did not comply with Eleventh Circuit precedent and constitutes reversible error. The Commissioner concedes the ALJ did not explicitly state his reasons for the credibility determination, but that Mixon has not made a compelling showing of error. The court agrees that the ALJ's decision sufficiently justified his partial crediting of Mixon's testimony.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d at 1228. exactlWhen evaluating evidence of disability in children, an ALJ considers information about a child's symptoms and functioning from medical sources, parents/caregivers, and teachers. 20 C.F.R. § 416.924a(a)(1-2). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

---

[19] R. at 136.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002). "The credibility determination does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to enable [a court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer, id*. at 1210, quoting *Foote*, 67 F.3d at 1561. "Even if the ALJ fails to make an explicit credibility determination as to a friend's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony." *Robinson v. Astrue*, 365 Fed.Appx. 993, 998 (11th Cir. 2010), citing *Tieniber v. Heckler*, 720 F.2d 1251, 1254-55 (11th Cir. 1983).

Mixon argues the ALJ's finding that her "statements concerning the intensity, persistence and limiting effects of [TR's] symptoms are not credible to the extent they are inconsistent with finding that [TR] does not have an impairment or combination of impairments that functionally equals the listings **for the reasons explained below**" is an unacceptable, conclusory justification for the credibility finding.[20] Mixon argues the ALJ summarized her testimony and offered no credibility discussion. However, the phrase "for the reasons explained below" signals that the ALJ considers the next passages as a rebuttal to the discredited testimony by Mixon. The ALJ's "explanation" consists of the

---

[20] Pl. Br. 10-11 (emphasis added).

current state of TR's school abilities as reported by her special education teacher in 2009. Here, the structure and content of the ALJ's decision leads the Court to conclude the credibility finding meets the Eleventh Circuit's standard. After finding Mixon's testimony partially credible, the conflicting teacher's reports showed the extent to which the testimony was discredited

The Court has examined the ALJ decision in this case under the well-known instruction from *Wilson* which states "[I]f the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson, id*. at 1225. It is true that the ALJ in this case did not employ any signal phrases such as "Mixon is not credible because . . ." or "objective medical findings indicate untruthful testimony. . . ." However, a full reading of the ALJ's entire discussion on credibility sufficiently demonstrates evidence which, in the ALJ's consideration, supported discounting Mixon's testimony. Notwithstanding the ALJ's failure to highlight his credibility in "explicit" fashion, the juxtaposition of Mixon's testimony and teacher reports convince this Court that the ALJ articulates adequate grounds for his findings. The ALJ's reasons for rejecting Mixon's testimony were implicit, and do not provide grounds for reversal.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by

substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 14th day of March, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE